IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| FRANCISCO GALLEGOS,<br>TDCJ No. 2209502,<br>    Petitioner, | § § § § | |
| v. | § § | EP-19-CV-53-FM |
| BOBBY LUMPKIN,[1]<br>Director, Texas Department of<br>Criminal Justice, Correctional<br>Institutions Division,<br>    Respondent. | § § § § § § | |

## MEMORANDUM OPINION AND ORDER

Francisco Gallegos, a state prisoner confined at the Smith Unit in Lamesa, Texas, challenges a prison disciplinary proceeding through a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Pet'r's Pet., ECF No. 2. Bobby Lumpkin, the Director of the Correctional Institutions Division, maintains Gallegos "fails to state a cognizable claim" for relief. Resp't's Resp. 1, ECF No. 23. The Court will deny Gallegos' petition for the reasons discussed below. The Court will additionally deny Gallegos a certificate of appealability.

## BACKGROUND AND PROCEDURAL HISTORY

Gallegos is in Lumpkin's lawful custody pursuant to multiple judgments entered by the 41st Judicial District Court of El Paso County, Texas. Resp't's Resp., Ex. A, ECF No. 23. Gallegos pleaded guilty to three domestic violence offenses which occurred in 2012 and 2013. *Id.* He was sentenced on September 21, 2016, to five years' imprisonment for an aggravated assault and an assault on a family member. *Id.* He was sentenced on June 6, 2018, to five years' imprisonment for an aggravated assault which resulted in an injury of a child, elderly or

---

[1] Petitioner names Warden David Lofton as Respondent. The Court believes Bobby Lumpkin, the current Director of the Correctional Institutions Division, is the proper Respondent in this matter. *See* Fed. R. Civ. P. 25(d).

disabled person. *Id.*

On August 18, 2018, Officer Jesse Chavez, a correctional officer at the Smith Unit, observed Gallegos striking another inmate, Ty Easter, several times with his fists. State Disciplinary Hearing Records 4, ECF No. 21-2. He yelled at the inmates to stop fighting. *Id.* He intervened in the altercation with the assistance of Sergeant FNU Gonzales and stopped the altercation. *Id.*

On August 20, 2018, Gallegos received notice of disciplinary proceeding number 20180332804 charging him with engaging "in a fight without a weapon with offender Easter . . . by striking offender Easter several times in the upper body with closed fists. Moreover, the fight did not result in any injuries." *Id.* at 3. On August 21, 2018, Gallegos appeared before a disciplinary officer, pleaded not guilty, and claimed he "was attacked" by inmate Easter. *Id.* He was found guilty of the offense alleged in the notice by the disciplinary officer based on the "officer's report" and the "officer's testimony." *Id.* He was sanctioned with the loss of 30 days of good conduct credits, 45 days of recreation, 45 days of commissary privileges, and 120 days of contact visits. *Id.* He filed Step One and Step Two grievances with the Texas Department of Criminal Justice following his hearing. State Grievance Records 3–6, ECF No. 21-1. His grievances were denied because, according to the reviewer, "[a]ll due process requirements were satisfied and the punishment imposed was within agency guidelines." *Id.* at 6.

Gallegos now complains that he was denied his due process rights during the disciplinary proceedings. Pet'r's Pet. 6–7, ECF No. 2. Specifically, he alleges he was denied the opportunity to (1) appear in person and present evidence in his behalf, (2) confront and cross examine adverse witnesses, (3) prepare his case because he was not given adequate notice of the hearing, or (4) call an officer to testify for him at the hearing. *Id.* He says he wants "the

conviction overturned." *Id.* at 7.

## APPLICABLE LAW

"Prison discipline proceedings are not a part of a criminal prosecution, and the full panoply of rights due a criminal defendant does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). As a result, procedural protections in the prison-discipline context are not the same as due process protections in the criminal-law context. *Id.* Due process requirements apply to prison disciplinary proceedings only to the extent the prisoner is threatened with (1) a loss of good-time credits which affects the fact or duration of his sentence or (2) solitary confinement. *Id.* In these limited cases, the procedural protections are satisfied if the inmate receives "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985). In other cases—when disciplinary sanctions do not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest"—there is no "protected liberty interest" that would entitle the inmate to procedural protections. *Sandin v. Conner*, 515 U.S. 472, 486 (1995).

A state prisoner who alleges he improperly lost good-time credits which, if restored, would result in his earlier release from prison may seek habeas relief under 28 U.S.C. § 2254. *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973); *see also McGary v. Scott*, 27 F.3d 181, 183 (5th Cir. 1994) (explaining a petition alleging the improper denial of good-time credits arises under 28 U.S.C. § 2254 and is subject to the Rules Governing Section 2254 Cases). But he is not entitled to relief unless he shows he "has been deprived of some right secured to him . . . by the

United States Constitution or the laws of the United States." *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (internal quotations and citation omitted).

A Texas prisoner may become eligible for early release from prison through either parole or mandatory supervision. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). " 'Parole' means the discretionary and conditional release of an eligible prisoner." *Id.* There is no constitutional expectation of parole in Texas. *Creel v. Keene*, 928 F.2d 707 (5th Cir. 1991). "[A]n inmate's eligibility for release to mandatory supervision is controlled by the mandatory supervision statute in effect on the date that the inmate committed the offense." *Ex parte Noyola*, 215 S.W.3d 862, 865 (Tex. Crim. App. 2007). Before 1995, "all inmates whose good time plus actual time in prison equaled the total length of their sentence were absolutely required to be released on parole." *Ex parte Evans*, 338 S.W.3d 545, 552 (Tex. Crim. App. 2011). After 1995, the Board of Pardons and Parole may "deny release to an inmate, who is otherwise eligible for release on mandatory supervision, if it finds that (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation, and (2) the inmate's release would endanger the public." *Id.* Additionally, "[a]n inmate 'may not be released to mandatory supervision if the inmate is serving a sentence for or has been previously convicted of' an offense enumerated in [Texas Government Code] Section 508.149(a)." *Ex parte Thompson*, 173 S.W.3d 458, 459 (Tex. Crim. App. 2005).

The distinction between parole and mandatory supervision in Texas is important. A state prisoner has "no liberty interest in obtaining parole [and] cannot complain of the constitutionality of procedural devices" which result in his loss of good-time credits. *Allison v. Kyle*, 66 F.3d 71, 73–74 (5th Cir. 1995). In contrast, even under the amended law, a state prisoner has a protected liberty interest in his previously earned good-time credits under the

mandatory supervision scheme so that the State may not deprive him of the credits without first affording him the requisite due process. *Teague v. Quarterman*, 482 F.3d 769, 774 (5th Cir. 2007).

Consequently, the loss of good-time credits by a Texas prisoner will trigger the protection of the Constitution if—and only if—the prisoner is eligible for release on mandatory supervision. *Madison*, 104 F.3d at 769. Indeed, a Texas prisoner must satisfy two criteria to demonstrate a due process violation for the loss of good-time credits in the prison disciplinary context: (1) he must be eligible for early release on mandatory supervision; and (2) the disciplinary conviction must have resulted in a loss of previously earned good-time credits. *Malchi v. Thaler*, 211 F.3d 953, 957–58 (5th Cir. 2000).

## ANALYSIS

Gallegos complains he was denied his due process rights during the disciplinary proceedings brought against him. Pet'r's Pet. 6–7, ECF No. 2. He explains the proceedings resulted in his loss of 30 days of good conduct credits, 45 days of recreation, 45 days of commissary privileges, and 120 days of contact visits. State Disciplinary Hearing Records 3, ECF No. 21-2. His petition is premised on his assertion that the amended mandatory supervision scheme—which applies to his offenses which all occurred after 1995—provides him with a protected liberty interest in his previously earned good-time credits. Pet'r's Reply 2, ECF No. 25 (citing *Teague*, 482 F.3d at 774). He maintains the State failed to provide the necessary due process before it imposed sanctions—including the loss of good-time credits—on him.

Texas Government Code § 508.147 provides "a parole panel shall order the release of an inmate who is not on parole to mandatory supervision when the actual calendar time the inmate

has served plus any accrued good conduct time equals the term to which the inmate was sentenced." Tex. Gov't Code Ann. § 508.147 (West). "Texas' . . . mandatory supervision scheme creates a constitutional expectancy of early release and, as such, a protected liberty interest in previously earned good-time credits." *Teague*, 482 F.3d at 777. However, a prisoner convicted of certain crimes listed under Texas Government Code §508.149 is not eligible for release to mandatory supervision. Tex. Gov't Code §508.149 (West). A prisoner not eligible for mandatory supervision does not have a protected liberty interest in previously earned good-time credits—and need not receive procedural protections before he is penalized. *Malchi*, 211 F.3d at 957–58.

Gallegos is serving a five-year sentence for an aggravated assault which resulted in an injury of a child, elderly or disabled person, in violation Section 22.02 of the Penal Code. Resp't's Resp. 8 and Ex. A, p. 5, ECF No. 23. His conviction for an aggravated assault makes him ineligible for release to mandatory supervision. Tex. Gov't Code §508.149(a)(7) (West) (requiring that "an inmate may not be released to mandatory supervision if the inmate is serving a sentence for or has been previously convicted of . . . a first degree felony or a second degree felony under Section 22.02, Penal Code"); Tex. Penal Code § 22.02 (West) ("Aggravated Assault. A person commits an offense if the person commits assault as defined in § 22.01 and the person: (1) causes serious bodily injury to another, including the person's spouse; or (2) uses or exhibits a deadly weapon during the commission of the assault."). Consequently, because Gallegos' loss of good time credits, recreation, commissary privileges, and contact visits do not affect the fact or duration of his sentence, his sanctions do not provide a basis for federal habeas corpus relief. *Madison*, 104 F.3d at 768. In sum, Gallegos received all the process he was due and he is not entitled to habeas relief.

## CERTIFICATE OF APPEALABILITY

"[T]he right to appeal is governed by the certificate of appealability (COA) requirements now found at 28 U.S.C. § 2253(c)." *Sack v. McDaniel*, 529 U.S. 473, 478 (2000). A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Gonzalez v. Thaler*, 132 S. Ct. 641, 646 (2012). In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Gallegos has not made a substantial showing of the denial of a constitutional right. Thus, reasonable jurists could not debate the denial of his § 2254 petition or find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Moreover, reasonable jurists would not debate whether the Court's procedural rulings are correct. The Court shall not issue a certificate of appealability.

## CONCLUSIONS AND ORDERS

The Court concludes the State's disciplinary sanctions will *not* inevitably affect the duration of Gallegos' sentence. The Court further concludes the State's actions will *not* trigger the protections of the Constitution. Accordingly, the Court finally concludes Gallegos' petition does not identify an actionable basis for him to receive relief under federal habeas corpus law,

and it must be denied. *Sandin*, 515 U.S. at 483–84; *Madison*, 104 F.3d at 767. The Court, therefore, enters the following orders:

**IT IS ORDERED** that Gallegos' "Petition for a Writ of Habeas Corpus by a Person in State Custody" (ECF No. 2) is **DENIED** and his civil cause is **DISMISED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Gallegos is **DENIED** a certificate of appealability.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SIGNED** this 29 day of September 2020.

_____
**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**